NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**21-325**

**GIDION THOMAS ROARK, III**

**VERSUS**

**FUSELIER VETERINARY SERVICES, LLC, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 20-C-2202
HONORABLE D. JASON MECHE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**J. LARRY VIDRINE
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Chief Judge, Van H. Kyzar, and J. Larry Vidrine,\* Judges.

**AFFIRMED IN PART AND REMANDED.**

_____

\*Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**H. Minor Pipes, III**
**Katie S. Roth**
**Kelsey L. Meeks**
**Pipes Miles Beckman, LLC**
**1100 Poydras Street, Suite 1800**
**New Orleans, LA 70163**
**(504) 322-7070**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Luisa Giovanna Paucchi**
    **Lu's Labrador Retriever Rescue, Inc.**

**R. Graham Arnold**
**Myles Law Firm**
**1575 Church Street**
**Zachary, LA 70791**
**(225) 654-6006**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Gidion Thomas Roark, III**

**Amber Sheppard**
**Sheppard Law, PLLC**
**1924 F Corporate Square Drive**
**Slidell, LA 70458**
**(985) 265-7196**
**COUNSEL FOR AMICUS CURIAE:**
    **Louisiana Society for the Prevention of Cruelty to Animals**
    **and Owners of Adopted Pets Throughout Louisiana**

**VIDRINE, Judge Pro Tempore**

This appeal involves a dispute between two parties who claim ownership of a Labrador Retriever named "Jack."

Plaintiff Gidion Thomas "Tres" Roark III ("Mr. Roark") is Jack's undisputed owner from 2013 to April 17, 2020, when Jack escaped from his backyard in New Roads, liberated by a thunderstorm that felled a tree and knocked down Mr. Roark's fence. Jack had come to Plaintiff when Jack's prior owner Zach, who was Mr. Roark's friend, died tragically in an automobile accident.

Defendant "Lu's Labrador Retriever Rescue, Inc." is a Virginia based nonprofit dog rescue organization that came from afar to aid Jack's cause, when following Jack's escape, Jack appeared to be an orphan picked up and delivered by a Good Samaritan to a local animal shelter on May 23, five weeks later. The record reveals no history concerning Jack's intervening canine adventure.

From the Pointe Coupee Shelter Jack eventually made his way to a private veterinary clinic in Opelousas, St. Landry Parish, some fifty (50) miles distant. Nothing in the record reveals what or who precipitated this leg of Jack's adventure.

What is clear however is that Mr. Roark had Jack implanted before April 17 with a microchip for identification purposes, but that Jack's whereabouts nevertheless remained unknown to him until Defendant asked the St. Landry Parish veterinary clinic[1] holding Jack (or "Blue," as it called him) to scan Jack for such a microchip in accordance with the nonprofit's own policy.[2] It is unclear why the

---

[1] With Jack's precise whereabouts then unknown to Mr. Roark, he also named as defendants the Point Coupee shelter and the St. Landry Parish veterinary clinic, thus vesting the court in St. Landry Parish and this court with the authority to adjudicate this matter. However, Lu's is the only defendant to contest the matter.

[2] While the limited record does not elaborate on the capacity or expertise of the Pointe Coupee shelter who had Jack before his transfer to St. Landry Parish, it does clearly indicate that the Pointe Coupee's records wrongly indicated that Jack lacked such a chip.

nonprofit's policy did not extend to the Pointe Coupee Shelter's apparent transfer on May 28.

The veterinary clinic obeyed the nonprofit's instructions, and on May 29, 2020, less than six (6) weeks after Jack's Great Escape, the nonprofit notified Mr. Roark that Jack had survived. However, the nonprofit did not offer Mr. Roark his dog back, or keep him up to date as to Jack's whereabouts after this call.[3]

PROCEEDINGS

On June 18, 2020, Mr. Roark filed suit in St. Landry Parish, site of the Veterinary Clinic, for Declaratory Judgment, Damages and especially for Jack's return. On October 1, 2020, the parties entered a stipulated judgment prohibiting the nonprofit and its principal from transferring ownership or possession of Jack without leave of court.

As of January 18, 2021, Jack had not been returned to Mr. Roark.

On January 21, Mr. Roark filed a Motion for Summary Judgment with supporting Affidavits, the nonprofit's discovery responses and Jack's pre-escape veterinary records, eventually resulting in the partial summary judgment granted on March 8, 2021, from which this suspensive appeal issues.

The judgment proclaimed that Mr. Roark had been Jack's rightful owner throughout this ordeal and compelled Defendant to return the dog.[4]

The nonprofit appealed the trial court's finding that Mr. Roark, not it, owns the dog, in addition to requesting expenses for the period it provided for Jack, with

---

[3] What Mr. Roark could not have known during his one call with Ms. Lu, the nonprofit's founder, was that she had become attached to Jack after his rescue, as was made plain through the nonprofit's internal social media exchanges.

[4] The summary judgment addressed neither the nonprofit's claim for expense reimbursement, nor Mr. Roark'sclaim for damages.

or without Mr. Roark's permission, even though it presented or proffered no evidence with respect to the latter claim.

## STANDARD OF REVIEW

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 3 (La. 11/29/06), 950 So.2d 544, 546, *see* La. C.C.P. art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 06-1181, p. 17 (La. 3/9/07), 951 So.2d 1058, 1070.

Beer Indus. League of Louisiana v. City of New Orleans, 18-280 (La. 6/27/18), 251 So.3d 380, 385-86.

After reviewing the record before us, we affirm the judgment finding that Mr. Roark's rights to Jack never ceased.

The provision cited by the Trial Judge, La. Civil Code article 526, provides that:

> The owner of a thing is entitled to recover it from anyone who possesses or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him.

With specific regard to dogs, La.R.S. 3:2773 (A) is in accord with this provision:

> Dogs owned by citizens of this state and by citizens of other states and situated and located in this state are declared to be personal property of such citizens.

La. Civil Code Article 526 certainly operated to vest ownership in Mr. Roark through the time of escape and recapture and until at least five days beyond his being brought to the initial shelter in Pointe Coupee Parish on May 23.

3

The question as Defendant Lu's Labrador Retriever Rescue, Inc. presents it is whether Mr. Roark's ownership in Jack ceased when he was not reunited within five (5) days of his delivery to the Pointe Coupee Shelter.

THE PARTIES' ARGUMENTS

Citing Pointe Coupee Parish ordinances, Defendant Lu's believes that its role essentially devolved from dog rescuer to dog owner because Jack had a chip but no collar and was not collected by his far-away owner Mr. Roark within five (5) days of Jack's delivery by the Good Samaritan.

Taken together, the ordinances seem to provide dog owners in such cases a *minimum notice of five (5) days excluding Sundays and holidays in the case of a dog that cannot be identified*, including a dog that wears no collar, before "the dog shall be placed into a responsible home or humanely euthanized." Code of Ordinances, Pointe Coupee Parish Cogvernment, Sec. 4-11(b)(8).

The ordinances make no specific mention of a dog that is identifiable by microchip. The nonprofit maintains that the absence of a collar in Jack's case is dispositive. Mr. Roark counters by noting that the ordinances upon which Defendant relies are premised upon a dog "whose owner cannot be identified."

Ultimately, we find neither of these arguments dispositive. The ordinances plainly make no reference to microchips, but neither do they so plainly contemplate the loss of ownership under circumstances like these, where a dog does possess a microchip, where a local pet shelter wrongly concludes that the pet has no microchip, where an individual immediately upon being notified of his dog being found by a nonprofit dog rescue organization, supplies evidence of his prior care for the animal and still is not given back his pet simply for refusing to comply with still additional extrajudicial conditions demands being placed by an agency that holds itself out to be a mission-driven nonprofit animal-rescue organization, including home checks,

4

microchip and transfer to the nonprofit's name, and welfare checks at the discretion of third parties, and reduced to court order.

Given the foregoing, like the trial court we are persuaded that the answer lies in La.Civil Code art. 526.

The authority cited by the nonprofit nowhere explicitly conveyed Jack's ownership to itself any more than it did to the Good Samaritan, to the Pointe Coupee Shelter, or to the St. Landry Parish veterinary clinic.

The ordinances cited by the nonprofit constitute criminal misdemeanor ordinances that establish fines and provides that "the animal will either be placed into a responsible home, or humanely euthanized." To everyone's and society's credit, Jack was not euthanized, however neither was Jack restored to *his* responsible home until rendition of the summary judgment that comes before us on appeal, which we affirm.

While the Pointe Coupee shelter executed a document purporting to transfer ownership of Jack to the nonprofit, a "Shelter Rescue Transfer Form" of unknown origin, the form did not, under the circumstances here, transfer ownership of Jack. This is because, as the trial court found, one who has possession of a lost or stolen thing may not transfer its ownership to another, La.Civ. Code art. 521, especially here where either the Shelter or the nonprofit, specialists in the field, were in a position to timely confirm Jack's identity but failed to do so.

OTHER ISSUES:

*Lu's Expense Reimbursement*

The nonprofit also seeks reimbursement for the reasonable expenses it incurred in providing for Jack prior to his reunification with Mr. Roark.

5

During oral argument on the motion for summary judgment, Plaintiff stipulated that the issue would remain outstanding should this summary judgment be affirmed. It has been.

Therefore, in the event the issue is not dismissed or amicably resolved, on remand the trial judge is instructed to take into account not only the overall reasonableness of any expenses claimed by the nonprofit, but especially any expenses incurred after Mr. Roark's June 2020 proffer of veterinary medical evidence demonstrating his provision of care for Jack prior to the nonprofit's prolonged involvement in his care.

*Plaintiff's Damages*

As noted, Mr. Roark's petition also alleged that the nonprofit's actions resulted in damages to him including loss of enjoyment of life and property and emotional distress. These claims also remain unsettled.

The nonprofit's minutes excerpted in the record from its board meetings conducted on June 9, 16, and 25, 2020, reflect some tension among its board members concerning whether Jack should be returned to Mr. Roark after his identity had become known, and whether to even permit him to produce veterinary records to demonstrate that he was not neglectful. From afar, a majority of the nonprofit's divided board membership seems to have, via virtual board meeting, declined to interview Mr. Roark let alone reunite him with Jack even after being supplied with Jack's veterinarian records from 2013 through 2019.

The trial court never took up the question of whether the nonprofit was at fault, or to what extent Mr. Roark might have been aggrieved by its refusal to reunite Jack with his and rightful owner after May 23, 2020. Therefore, on remand the trial court is instructed to take up these issues as well.

*Decree*

For the foregoing reasons, the partial summary judgment granted by the trial court in favor of Gidion Thomas Roark is affirmed, at Lu's Lbarador Retriever Rescue, Inc.'s costs to date, with respect to the ownership and return of the Labrador Retriever named "Jack," with the issues of reimbursement and damages remanded to the District Court.

**AFFIRMED IN PART AND REMANDED.**


This opinion is NOT DESIGNATED FOR PUBLICATION.

Uniform Rules– Courts of Appeal, Rule 2–16.3.